UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HUY THANH VO,

        Plaintiff,

    v.

NELSON & KENNARD,
U.S. BANCORP and
DOES 1-10, inclusive,

        Defendants.

_____/

NO. CIV. S-12-2537 LKK/CKD

O R D E R

    Plaintiff Huy Thanh Vo sues defendants U.S. Bank National Association, N.D. and the law firm of Nelson & Kennard for unfair debt collection practices. U.S. Bank now moves to dismiss plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12.[1]

    The motion came on for hearing on March 11, 2013. Having considered the matter, for the reasons set forth below, the court will grant U.S. Bank's motion in part and deny it in part.

---

[1] Nelson & Kennard filed an Answer on February 25, 2013. (ECF No. 27.)

1

**I. PLAINTIFF'S ALLEGATIONS**[2]

Prior to 2009, plaintiff's brother, Khoa T. Vo, allegedly incurred a debt to defendant U.S. Bank. (Second Amended Complaint ("SAC") ¶ 11, ECF No. 21.) Upon asserted failure to pay the debt, U.S. Bank retained defendant Nelson & Kennard to take legal action to collect the alleged debt. (SAC ¶ 13.)

Nelson & Kennard represented U.S. Bank in the case of <u>U.S. Bank National Association ND v. Huy Thanh Vo aka Khoa T Vo</u>, No. 34-2009-00041262, filed in the Sacramento County Superior Court ("Collection Action"). (SAC ¶ 13.) Even though plaintiff was named as a defendant in the Collection Action, he bore no responsibility for the alleged debt. (SAC ¶ 15.)

On August 17, 2009, U.S. Bank took plaintiff's default judgment in the Collection Action, although he had never been served. (SAC ¶ 13.) The default judgment was subsequently recorded in Sacramento County, causing a judgment lien to attach to plaintiff's real property in the county. (SAC ¶ 14.)

The judgment negatively affected plaintiff's credit rating. In April 2012, when plaintiff attempted to refinance a loan on his property, he was offered an interest rate of 5.5%, though interest rates as low as 4% were available to borrowers with good credit. (SAC ¶ 36.)

Plaintiff was not served with the complaint in the Collection

---

[2] Plaintiff's allegations are taken as true for purposes of resolving a motion to dismiss. <u>Erickson v. Pardus</u>, 551, U.S. 89, 94 (2007).

2

1  Action, the default judgment, or a lien notice, and was therefore

2  unaware of the lawsuit for several years. (SAC ¶ 19.)

3      The first time plaintiff learned of the Collection Action was

4  in April 2012, when he was served with a notice of levy. (SAC

5  ¶ 22.) He was confused because he had never incurred a debt to U.S.

6  Bank. (SAC ¶ 25.)

7      Plaintiff retained his present counsel, Jeremy Winter, to

8  investigate. (SAC ¶ 25.)  Winter contacted Nelson & Kennard, which,

9  after researching the issue, agreed that only Khoa T. Vo was liable

10  for the alleged debt, and that plaintiff had been incorrectly named

11  as a defendant in the Collection Action. (SAC ¶¶ 25-26.)

12      On May 24, 2012, attorney Winter corresponded with Nelson &

13  Kennard, and demanded that defendants do whatever was necessary to

14  vacate the judgment entered against plaintiff, and thereby clear

15  up his credit report. (SAC ¶ 40.) Winter followed up with Nelson

16  & Kennard twice thereafter. Nevertheless, nearly 90 days passed

17  with no corrective action by defendants. (SAC ¶ 41.)

18      On August 20, 2012, plaintiff moved to vacate the default

19  judgment. U.S. Bank opposed the motion, requesting that the court

20  instead substitute Khoa T. Vo's name for plaintiff's in the

21  pleadings and default judgment. Plaintiff incurred additional

22  attorney fees in having to reply to this opposition. (SAC ¶¶ 47-48,

23  51.) The Sacramento County Superior Court ultimately granted

24  plaintiff's motion. (SAC ¶ 52.)

25      These events, and a consequent, ongoing deterioration in his

26  relationship with his brother Khoa T. Vo, caused plaintiff

3

1  emotional distress. Plaintiff also incurred attorney fees and costs

2  in moving to vacate the default judgment. (SAC ¶¶ 44-46, 53, 61.)

3      Plaintiff's complaint asserts: (1) violations of the Fair Debt

4  Collection Practices Act, 15 U.S.C. §§ 1692 - 1692p ("FDCPA"); (2)

5  violations of California's Rosenthal Fair Debt Collection Practices

6  Act, Cal. Civ. Code §§ 1788 - 1788.33 ("Rosenthal Act"); (3)

7  negligence; (4) libel, and (5) malicious prosecution.

8      Defendant moves to dismiss the SAC under Rule 12(b)(6), as

9  well as for lack of subject matter jurisdiction under Rule 12(b)(1)

10  and the Rooker-Feldman doctrine.

11  **II. STANDARD ON MOTION TO DISMISS UNDER RULE 12(b)(6)**

12      A dismissal motion under Rule 12(b)(6) challenges a

13  complaint's compliance with federal pleading requirements. Under

14  Rule 8(a)(2), a pleading must contain a "short and plain statement

15  of the claim showing that the pleader is entitled to relief." The

16  complaint must give the defendant "'fair notice of what the ...

17  claim is and the grounds upon which it rests.'" Bell Atlantic v.

18  Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355

19  U.S. 41, 47 (1957)).

20      To meet this requirement, the complaint must be supported by

21  factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

22  Moreover, this court "must accept as true all of the factual

23  allegations contained in the complaint." Erickson v. Pardus,

24  ////

25  ////

26  ////

1  551 U.S. 89, 94 (2007).[3]

2      "While legal conclusions can provide the framework of a
3  complaint," neither legal conclusions nor conclusory statements are
4  themselves sufficient, and such statements are not entitled to a
5  presumption of truth. Iqbal, 556 U.S. at 678. Iqbal and Twombly
6  therefore prescribe a two-step process for evaluation of motions
7  to dismiss. The court first identifies the non-conclusory factual
8  allegations, and then determines whether these allegations, taken
9  as true and construed in the light most favorable to the plaintiff,
10 "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S.
11 at 664.

12      "Plausibility," as it is used in Twombly and Iqbal, does not
13 refer to the likelihood that a pleader will succeed in proving the
14 allegations. Instead, it refers to whether the non-conclusory
15 factual allegations, when assumed to be true, "allow[ ] the court
16 to draw the reasonable inference that the defendant is liable for
17 the misconduct alleged." Iqbal, 556 U.S. at 663. "The plausibility
18 standard is not akin to a 'probability requirement,' but it asks
19 for more than a sheer possibility that a defendant has acted
20 unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[4] A complaint

21 _____

22      [3] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490
   U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
23 are dismissals based on a judge's disbelief of a complaint's
   factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
24 (1974) ("it may appear on the face of the pleadings that a recovery
   is very remote and unlikely but that is not the test" under
25 Rule 12(b)(6)).

26      [4] Twombly imposed an apparently-new "plausibility" gloss on
   the previously well-known Rule 8(a) standard, and retired the

                                    5

1   may fail to show a right to relief either by lacking a cognizable

2   legal theory or by lacking sufficient facts alleged under a

3   cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901

4   F.2d 696, 699 (9th Cir. 1990).

5   **III. ANALYSIS**

6       **A. Request for Judicial Notice**

7       U.S. Bank requests that the court take judicial notice of

8   seven documents filed in the Collection Action: (1) U.S. Bank's

9   complaint, filed April 15, 2009 (Request for Judicial Notice

10  ("RJN") Ex. 6, ECF No. 22-3); (2) proof of service of summons &

11  complaint, filed June 29, 2009 (RJN Ex. 1); (3) U.S. Bank's request

12  for entry of default and default judgment, filed August 17, 2009

13  (RJN Ex. 8); (4) default judgment, entered August 17, 2009 (RJN Ex.

14  2); (5) plaintiff Huy Thanh Vo's motion for relief from default

15  judgment, filed August 20, 2012 (RJN Ex. 3); (6) defendant U.S.

16  Bank's ex parte application for order amending judgment, filed

17

18  long-established "no set of facts" standard of <u>Conley v. Gibson</u>,
    355 U.S. 41 (1957), although it did not overrule that case
19  outright. <u>See</u> <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th
    Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright
20  overruling <u>Conley</u> ...," although it was retiring the "no set of
    facts" language from <u>Conley</u>). The Ninth Circuit has acknowledged
21  the difficulty of applying the resulting standard, given the
    "perplexing" mix of standards the Supreme Court has applied in
22  recent cases. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th
    Cir. 2011) (comparing the Court's application of the "original,
23  more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>,
    534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per
24  curiam), with the seemingly "higher pleading standard" in <u>Dura
    Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), <u>Twombly</u> and
25  <u>Iqbal</u>), <u>rehearing</u> <u>en banc</u> <u>denied</u>, 659 F.3d 850 (October 5, 2011).
    <u>See</u> <u>also</u> <u>Cook v. Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011)
26  (applying the "no set of facts" standard to a Section 1983 case).

1   September 19, 2012 (RJN Ex. 4); and (7) a minute order of the

2   Sacramento County Superior Court, dated September 21, 2012 (RJN Ex.

3   5).

4        U.S. Bank also requests that the court take judicial notice

5   of an abstract of judgment, issued by the Sacramento County

6   Superior Court on December 16, 2009 and recorded in the Sacramento

7   County Recorder's Office on December 31, 2009. (RJN Ex. 7.)

8        "As a general rule, a district court may not consider any

9   material beyond the pleadings in ruling on a Rule 12(b)(6) motion."

10  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)

11  (internal quotations and citation omitted). However, a court may

12  consider matters properly subject to judicial notice. Swartz v.

13  KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A matter may be

14  judicially noticed if it is either "generally known within the

15  territorial jurisdiction of the trial court" or "capable of

16  accurate and ready determination by resort to sources whose

17  accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

18  Courts may "take judicial notice of court filings and other matters

19  of public record[, as they] are readily verifiable and, therefore,

20  the proper subject of judicial notice." Reyn's Pasta Bella, LLC v.

21  Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (internal

22  citation omitted).

23       Accordingly, the court will take judicial notice of the eight

24  documents specified by the bank.

25  **B. Has the applicable statute of limitations expired?**

26       The FDCPA's statute of limitations is "one year from the date

7

on which the violation occurs." 15 U.S.C. § 1692k(d). Rosenthal Act claims must also be brought "within one year from the date of the occurrence of the violation." Cal. Code Civ. Proc. § 1788.30(f).

U.S. Bank argues that, as the Collection Action was filed on April 15, 2009, and this action was commenced on October 10, 2012, plaintiff's causes of action under the FDCPA and the Rosenthal Act are time-barred. (Memorandum of Points and Authorities in Support of Motion to Dismiss ("Mot. to Dismiss") 4-5, ECF No. 22-1.)

Plaintiff counters that the statute of limitations began to run only in April 2012, when he was served with a notice of levy and first learned of the Collection Action. (Opposition to U.S. Bank's Motion to Dismiss ("Opposition") 4, ECF No. 26.)

Under Ninth Circuit precedent, the FDCPA limitations period "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009) (internal citation and quotation omitted). The Ninth Circuit has also held, however, that where the alleged violation is the filing of a lawsuit, the statute of limitations begins to run on the date the complaint was filed. Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997).

The apparent contradiction between these holdings can be resolved by recognizing that Naas only applies to cases where there is no question that the defendant was properly named and served in the underlying collection action. In such cases, the statute of limitations should ordinarily begin to run upon the action's

1   filing. But where the defendant does not receive proper notice in

2   the course of litigation, then, per Manqum, the statute of

3   limitations begins to run when the plaintiff "knows or has reason

4   to know" of the FDCPA violation.

5        Post-Manqum district court opinions which address the FDCPA's

6   statute of limitations follow this pattern. In Cappos v. Suppa,

7   Trucchi & Henin, LLP, No. 12-cv-357, 2012 WL 6057995, 2012 U.S.

8   Dist. LEXIS 173383 (S.D. Cal. Dec. 5, 2012) – a decision relied

9   upon by U.S. Bank, and one that cites both Manqum and Naas - the

10  plaintiffs sued under the FDCPA and the Rosenthal Act, alleging

11  that defendant sued for an excessive amount in the underlying

12  collection action. The court, in finding the claim time-barred,

13  noted, "Plaintiffs' state-court answer unequivocally shows that

14  they knew of Wells Fargo's attempt to collect the impermissible

15  debt at the very latest when Plaintiffs filed their answer." Id.

16  In other words, the Cappos plaintiffs were properly named and

17  served.

18       By contrast, in Greco-Rambo v. Prof'l. Collection Consultants,

19  No. 11CV917, 2011 WL 3759676, 2011 U.S. Dist. LEXIS 95328 (S.D.

20  Cal. Aug. 25, 2011), the plaintiff alleged that she was not served

21  with the state court complaint, and only learned of the collection

22  action thirteen months later, when her wages were garnished. Four

23  months thereafter, she filed suit under the FDCPA. Defendant moved

24  to dismiss under the statute of limitations; the court denied the

25  motion, reasoning that, "[h]aving alleged that Plaintiff was

26  unaware of the default judgment until December 2010, the Court

concludes that Plaintiff could prove a set of facts that would establish that equitable tolling applies and that the action was timely."

U.S. Bank argues that equitable tolling is not warranted under the facts of this case. It contends that the mailing of a Request for Entry of Default to plaintiff's home address on August 6, 2009 and the recording of an Abstract of Judgment on December 31, 2009 put plaintiff on either actual or constructive notice no later than the end of 2009. (Mot. to Dismiss 5.) I cannot agree. The complaint alleges that plaintiff did not receive actual notice till he was mailed a notice of levy in April 2012. In ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true. Erickson, 551 U.S. at 94. Even having taken judicial notice of the Request for Entry of Default and Abstract of Judgment, the court has no basis for not accepting the truth of plaintiff's allegation that he did not know about the Collection Action until April 2012.  Indeed, receiving notice of entry of default in a case the plaintiff never received a summons in might well give rise to confusion. Confusion, however, is not the equivalent of notice.

Moreover, as to U.S. Bank's constructive notice argument, a judgment entered against a party not served with process is deemed void. Nissan v. Barton, 4 Cal. App. 3d 76, 81 (1970). Defendant cites no authority for deeming a person to have constructive notice of a lien based upon a void judgment, nor can I find any reason to do so.

Finally, there are no grounds to bar plaintiff's Rosenthal Act

claims under the Act's one-year statute of limitations. At least one California Court of Appeals has persuasively argued that the so-called "continuing violation doctrine" applies to Rosenthal Act cases.[5] <u>Komarova v. National Credit Acceptance, Inc.</u>, 175 Cal. App. 4th 324 (2009). Under this doctrine, when allegedly unlawful acts constitute a "continuing pattern and course of conduct," then suit regarding the entire course of conduct is timely if a complaint is filed within one year of the most recent violation. <u>Id.</u> at 343-44. "Application of the doctrine . . . [is] entirely consistent with the Rosenthal Act's broad remedial purpose of protecting consumers." <u>Id.</u> at 344 (quoting <u>Joseph v. J.J. Mac Intyre Companies, L.L.C.</u>, 281 F. Supp. 2d 1156, 1162 (N.D. Cal. 2003)). As the <u>Komarova</u> court observed: "Use of judicial proceedings to collect a debt without service of process . . . will also be a continuing course of conduct insofar as the conduct involves multiple acts, such as obtaining and collecting on a judgment, that extend over a period of time before the proceedings are concluded." Accordingly, the court concludes that the Rosenthal Act's statute of limitations does not bar plaintiff's second cause of action.

////

---

[5] The California Supreme Court has not addressed the question. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it. In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." <u>Giles v. Gen. Motors Acceptance Corp.</u>, 494 F.3d 865, 872 (9th Cir. 2007) (quoting <u>Dimidowich v. Bell & Howell</u>, 803 F.2d 1473, 1482 (9th Cir.1986) (as amended)).

1    **C. Is U.S. Bank subject to the FDCPA?**

2    U.S. Bank argues that it cannot be held liable under the FDCPA

3    because (1) it is not a debt collector, and (2) the statute does

4    not provide for vicarious liability. (Mot. to Dismiss 6-8.)

5    **1. Is U.S. Bank a "debt collector" under the FDCPA?**

6    To be held directly liable for violating the FDCPA, a

7    defendant must, as a threshold requirement, be a "debt collector,"

8    within the meaning of the statute. Heintz v. Jenkins, 514 U.S. 291,

9    293 (1995).

10   15 U.S.C. § 1692a(6) defines "debt collector" as "a person who

11   uses any instrumentality of interstate commerce or the mails in any

12   business the principal purpose of which is the collection of any

13   debts, or who regularly collects or attempts to collect, directly

14   or indirectly, debts owed or due or asserted to be owed or due

15   another."

16   With certain exceptions,[6] it has been held that a creditor

17   seeking to collect its own debt is not subject to the FDCPA. See

18   Maquire v. Citicorp Retail Services, Inc., 147 F.3d 232, 235 (2nd

19   Cir. 1998) ("As a general matter, creditors are not subject to the

20   FDCPA"); Staub v. Harris, 626 F.2d 275, 277 (3rd Cir. 1980) ("The

21   [FDCPA] does not apply to persons or businesses collecting debts

22   on their own behalf"); Perry v. Stewart Title Co., 756 F.2d 1197,

23   1208 (5th Cir. 1985) ("The legislative history of section 1692a(6)

24   _____

25   [6] For example, "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect

26   such debts" is considered a "debt collector." 15 U.S.C. § 1692a(6).

indicates conclusively that a debt collector does not include the consumer's creditors . . . ."); <u>MacDermid v. Discover Fin. Services</u>, 488 F.3d 721, 734 (6th Cir. 2007) ("The term 'debt collector' has a particular meaning, however: it refers only to persons attempting to collect debts due 'another'"); <u>Aubert v. American Gen. Fin., Inc.</u>, 137 F.3d 976, 978 (7th Cir. 1998) ("Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the [FDCPA] unless they collect under a name other than their own").[7]

Plaintiff alleges that Khoa T. Vo incurred a financial obligation to U.S. Bank sometime before 2009. (SAC ¶ 11.) As U.S. Bank was attempting to collect on this obligation - *i.e.*, its own debt - when it sued plaintiff, under the cases noted above, it is not a "debt collector" within the meaning of the FDCPA and therefore cannot be held directly liable under the statute.[8]

**2.   Can U.S. Bank be held vicariously liable under the FDCPA for Nelson & Kennard's actions?**

Plaintiff alleges: "Because [Nelson & Kennard] acted on behalf of US Bank in it's [*sic*] collection of the debt against Plaintiff,

---

[7] Research has failed to uncover a published Ninth Circuit opinion addressing this question. Whether the Seventh Circuit's benign opinion on the efficacy of competition to restrain collection practices reflects reality need not be resolved in this case.

[8] Because the outcome of the motion is not dictated by the out-of-circuit cases, they are not considered in further detail.

Defendant US Bank should be held vicariously liable under the FDCPA and be subject to the same penalties and damages as [Nelson & Kennard]." (SAC ¶ 65.)

In support of this position, plaintiff cites <u>Fox v. Citicorp Credit Serv., Inc.</u>, 15 F.3d 1507 (9th Cir. 1994). (Opposition 7.) <u>Fox</u> holds that, "[i]n order to give reasonable effect to section 1692i [which requires collection actions to be brought in the proper venue], we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken." (<u>Id.</u> at 1516.)

U.S. Bank counters that, for vicarious liability to apply, the vicariously liable party must itself be a "debt collector," as defined by the FDCPA. In support of this position, it cites <u>Oei v. N Star Capital Acquisitions, LLC</u>, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006), and two cases from the Sixth Circuit, <u>Wadlington v. Credit Acceptance Corp.</u>, 76 F.3d 103, 108 (6th Cir. 1996) and <u>Havens-Tobias v. Eagle</u>, 127 F. Supp. 2d 889, 898 (S.D. Ohio 2001).

The FDCPA is silent on the issue of vicarious liability; the doctrine is a creation of caselaw.[9] The Supreme Court has not directly dealt with the issue of vicarious liability in FDCPA

////

---

[9] As noted by this court in <u>Newman v. Checkrite California, Inc.</u>, 912 F. Supp 1354, 1370 n.19 (E.D.Cal 1995) (applying general agency principles to conclude that defendant could be held vicariously liable for its law firm's FDCPA violations), "Federal statutes creating tort liability [such as the FDCPA] have traditionally required the development of federal common law to fill in the interstices of the statute."

14

1  cases.[10]

2     Besides <u>Fox</u>, the only other Ninth Circuit case to address

3  vicarious FDCPA liability is <u>Clark v. Capital Credit & Collection</u>

4  <u>Serv.</u>, 460 F.3d 1162 (9th Cir. 2006). The <u>Clark</u> plaintiff sought

5  to hold an attorney liable for its debt collector client's FDCPA

6  violations (*i.e.*, the converse of the scenario presented in <u>Fox</u> and

7  <u>Newman</u>, *supra*). In deciding this issue, the Ninth Circuit began by

8  affirming <u>Fox</u>'s central holding, that clients are vicariously

9  liable for their attorneys' actions under the FDCPA. Nonetheless,

10 the court then refused to affirm the converse principle, finding

11 that "there is no legal authority for the proposition that an

12 attorney is generally liable for the actions of his client." The

13 court then cited this court's reasoning in <u>Newman</u>, 912 F. Supp at

14 1370, with approval, concluding that "general principles of

15 agency . . . form the basis of vicarious liability under the

16 FDCPA," and that to be held vicariously liable, "the 'principal'

17 must exercise control over the conduct or activities of the

18 'agent.'" <u>Clark</u>, 460 F.2d at 1173 (citing Restatement (Second) of

19 Agency § 1 (1958)). Finding no evidence that the defendant attorney

20 exercised control over the defendant debt collector, the court

21 affirmed summary judgment in favor of the attorney. <u>Id.</u>

22 _____

23     [10] In <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>,
   559 U.S. __, 130 S.Ct 1605, 1622 (2010) (holding that attorneys may
   not avail themselves of the "bona fide error" defense under the
24 FDCPA for their mistakes of law), the Supreme Court noted that "a
   lawyer's interest in avoiding FDCPA liability may not always be
25 adverse to her client. Some courts have held clients vicariously
   liable for their lawyers' violations of the FDCPA," citing <u>Fox</u>, 15
26 F.3d at 1516, for the latter proposition.

1    <u>Oei</u>, 486 F. Supp. 2d at 1089, cited by defendants, takes a

2    slightly different tack. The <u>Oei</u> court began by finding, in

3    accordance with <u>Clark</u>, <u>Newman</u>, and the Restatement (Second) of

4    Agency, that attorneys are agents of their debt collector clients,

5    and therefore may be held vicariously liable under the FDCPA. But

6    then, citing <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 405

7    (3rd Cir. 2000), <u>Wadlington</u>, 76 F.3d at 103, <u>Caron v. Charles E.</u>

8    <u>Maxwell, P.C.</u>, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999), and <u>First</u>

9    <u>Interstate Bank of Fort Collins v. Soucie</u>, 924 P.2d 1200, 1202

10   (Colo. App. 1996),[11] the <u>Oei</u> court held that principals can only be

11   held vicariously liable under the FDCPA if they themselves are

12   "debt collectors" under 15 U.S.C. § 1692a. In other words, under

13   the reasoning of <u>Oei</u>, an entity (such as defendant U.S. Bank) that

14   does not meet the FDCPA's definition of "debt collector" cannot be

15   held vicariously for its attorneys' acts. With the greatest of

16   respect, I cannot agree.

17   U.S. Bank's position (that only "debt collectors" may be held

18   vicariously liable for their attorney's acts) appears untenable

19   under Ninth Circuit precedent. Neither <u>Fox</u>, 15 F.3d at 1507, nor

20   <u>Clark</u>, 460 F.3d at 1162, found that the parties held vicariously

21   liable were "debt collectors" under the FDCPA. In fact, <u>Clark</u>

22   identifies and discusses a test for determining vicarious liability

23   under the FDCPA - whether or not the alleged principal exercises

24

25   [11] These decisions largely rest on the premise that to hold a
     non-"debt collector" vicariously liable under the FDCPA "would
26   [not] accord with the intent of Congress, as manifested in the
     terms of the Act . . . ." <u>Wadlington</u>, 76 F.3d at 108.

1  control over the alleged agent - without reference to whether the

2  alleged principal is a "debt collector." Id. at 1173. As attorneys

3  are their clients' agents, Blanton v. Womancare, Inc., 38 Cal. 3d

4  396, 403-4 (1985), it appears that U.S. Bank can be found

5  vicariously liable for Nelson & Kennard's FDCPA violations.

6       It is evident that holding creditors vicariously liable for

7  their attorneys' acts under the FDCPA will extend liability under

8  the statute to non-"debt collectors." Even accepting the Seventh

9  Circuit's view that creditors are not liable because "they are

10  presumed to restrain their abusive collection practices out of a

11  desire to protect their corporate goodwill," Aubert, 137 F.3d at

12  978, an attorney collecting a debt on behalf of a creditor is not

13  restrained by such reputational considerations. By acting as the

14  creditor's agent, and in effect, allowing the creditor to say, "I

15  didn't do it; my attorney did it," the attorney allows the creditor

16  to collect under "a name other than his own which would indicate

17  that a third person is collecting or attempting to collect such

18  debts." 15 U.S.C. § 1692a(6). In sum, holding non-"debt collector"

19  creditors vicariously liable for their attorneys' actions creates

20  needed incentives for creditors to monitor their attorneys'

21  compliance with fair debt collection laws.

22       I conclude, consistent with the Ninth Circuit's precedent,

23  that U.S. Bank can be held vicariously liable under the FDCPA for

24  Nelson & Kennard's acts.

25  **D. Is U.S. Bank subject to the Rosenthal Act?**

26       U.S. Bank disputes its liability for Rosenthal Act violations.

### 1. Direct liability

Plaintiff has properly pled U.S. Bank's direct liability under Cal. Civ. Code § 1788.17, under which plaintiff is proceeding. This section provides that "every debt collector collecting or attempting to collect a consumer debt [must] comply with the provisions of [the FDCPA, 15 U.S.C. §§] 1692b to 1692j . . . ." The Rosenthal Act defines "debt collector" as including "any person[12] who, in the ordinary course of business, regularly, on behalf of himself or herself . . . engages in debt collection." Cal. Civ. Code § 1788.2(c) Thus, unlike the FDCPA, the Rosenthal Act applies to creditors seeking to collect their own debts, so long as they do so "in the ordinary course of business, regularly.") The SAC properly alleges that U.S. Bank is a "debt collector" under this definition (SAC ¶ 8), and therefore states a claim for U.S. Bank's direct liability.

### 2. Vicarious liability

U.S. Bank argues that it cannot be held vicariously liable under the Rosenthal Act.  Again, I cannot agree.

According to Cal Civ. Code § 1788.2(c), the term "debt collector" does not include an attorney or counselor at law.

U.S. Bank contends that the phrase "attorney" necessarily encompasses law firms, and therefore, defendant Nelson & Kennard is outside the ambit of the Rosenthal Act. Consequently, U.S. Bank

---

[12] The term "person" means "a natural person, partnership, corporation, limited liability company, trust, estate, cooperative, association or other similar entity." Cal. Civ. Code § 1788.2(g).

cannot be held vicariously liable under the Act for Nelson & Kennard's actions.

U.S. Bank largely bases its argument on the California Court of Appeals' opinion in Carney v. Rotkin, Schmerin & McIntyre, 206 Cal. App. 3d 1513 (1988) (Kennard, J.).[13]

Two federal judges in California have relied on Carney to hold that the Rosenthal Act does not apply to law firms. See Owings v. Hunt & Henriques, No. 08cv1931-L, 2010 WL 3489342, 2010 U.S. Dist. LEXIS 91819 (S.D. Cal. Sep. 3, 2010) (Lorenz, J.); Minasyan v. Creditors Financial Group, No. 2:12-cv-01864, 2012 WL 2328242, 2012 U.S. Dist. LEXIS 85092 (C.D. Cal. Jun. 19, 2012) (Wright, J.); Ayvazian v. Moore Law Group, No. 2:12-CV-01506, 2012 WL 2411181, 2012 U.S. Dist. LEXIS 88556 (C.D. Cal. Jun. 26, 2012) (Wright, J.).

On the other hand, at least nine federal judges in California have held that the Rosenthal Act *does* apply to law firms. See Abels v. JBC Legal Group, P.C., 227 F.R.D. 541, 548 (N.D. Cal. 2005) (Ware, J.); Navarro v. Eskanos & Adler, No. 06-02231, 2007 WL 549904, 2007 U.S. Dist. LEXIS 15046 (N.D. Cal. Feb. 20, 2007) (Alsup, J.); Owens v. Brachfeld, No. 07-4400, 2008 WL 3891958, 2008 U.S. Dist. LEXIS 63701 (N.D. Cal. Aug. 19, 2008) (Fogel, J.); Robinson v. Managed Accounts Receivable Corp., 654 F. Supp. 2d 1051 (C.D. Cal. 2009) (Pregerson, J.); Miranda v. Law Office of D. Scott Carruthers, No. 1:10-01487, 2011 WL 2037556, 2011 U.S. Dist. LEXIS

---

[13] Research has failed to uncover any other opinion of the California courts, published or unpublished, that addresses this question.

55180 (E.D. Cal. May 23, 2011) (Wanger, J.); <u>Moriarty v. Henriques</u>,
No. 1:11-1208, 2011 WL 4769270, 2011 U.S. Dist. LEXIS 90442 (E.D.
Cal. Oct. 7, 2011) (Thurston, M.J.); <u>Bautista v. Hunt & Henriques</u>,
No. 11-4010, 2012 WL 160252, 2012 U.S. Dist. LEXIS 5009 (N.D. Cal.
Jan. 17, 2012) (Spero, M.J.); <u>Silva v. Jason Head, PLC</u>,
No. 09-05768, 2010 WL 4593704, 2010 U.S. Dist. LEXIS 121557 (N.D.
Cal Nov. 4, 2010) (Koh, J.); <u>Reimann v. Brachfeld</u>, No. 10-4156,
2010 WL 5141858, 2010 U.S. Dist. LEXIS 131727 (N.D. Cal. Dec. 13,
2010) (Seeborg, J.). However, none of these decisions cites or
appears to have considered <u>Carney</u>. Instead, the majority follow the
reasoning of <u>Abels</u>, 227 F.R.D. at 548, that "[s]ince the
[California] legislature specifically excluded attorneys from the
statute but was silent on law firms . . . the legislature did not
intend to exclude law firms."

     In <u>Carney</u>, 206 Cal. App. 3d at 1513, two employees of a debt
collection law firm (a secretary and an attorney) falsely
represented to plaintiff that a bench warrant had issued for her
arrest and that it would remain in effect until she paid the sum
demanded by the law firm. Plaintiff sued the law firm, the
secretary, the attorney, and the original creditor, alleging causes
of action for infliction of emotional distress, abuse of process,
and Rosenthal Act violations. The trial court sustained defendants'
demurrer and dismissed the complaint in its entirety.

     The appeals court partially reversed the trial court's order,
holding that defendant's conduct was not subject to the litigation
privilege articulated in Cal. Civ. Code § 47, and that plaintiff

1  had properly stated claims for intentional and negligent infliction

2  of emotional distress.

3      The majority of the <u>Carney</u> opinion deals with the foregoing

4  issues. The portion that U.S. Bank and the <u>Owings</u>, <u>Minasyan</u>, and

5  <u>Ayvazian</u> courts rely upon is brief and worth reproducing in full:

> Plaintiff's fourth cause of action alleges that, in
> telling her "non-payment of her debt would result in her
> arrest when in fact such action was not contemplated and
> not permitted by law," defendants violated the Fair Debt
> Collection Practices Act, particularly subdivision (e)
> of Civil Code section 1788.10. However, the Act applies
> only to "debt collectors"; it specifically exempts
> attorneys from its coverage. (Civ.Code, § 1788.2, subd.
> (c).) Here, the complaint shows on its face that
> defendant attorney was not a "debt collector" within the
> meaning of the Act. No amendment to the complaint could
> establish otherwise. Therefore, the trial court properly
> sustained defendants' demurrer to the fourth cause of
> action without leave to amend.

14  <u>Carney</u>, 206 Cal. App. 3d at 1526. In other words, the appeals court

15  did not explicitly find that the term "attorney" includes law

16  firms, or even discuss the issue. Nor can one infer with any

17  certainty that <u>Carney</u> implicitly makes such a finding. The opinion

18  does not make clear whether the plaintiff brought a Rosenthal Act

19  claim against the defendant law firm; it is entirely possible that

20  only the attorney was named, and that the use of the plural

21  possessive in the phrase "defendants' demurrer to the fourth cause

22  of action" merely reflects the fact that the defendants

23  collectively demurred to the complaint (rather than each defendant

24  individually demurring to the claims brought against him, her, or

25  it). As such, <u>Carney</u> is simply not persuasive precedent for the

26  proposition that the Rosenthal Act exempts law firms from the

21

definition of "debt collector."

The court now turns to construction of the statute. "In construing a state law, we follow the decisions of the state's highest court. The Erie principles apply equally in the context of pendent jurisdiction." Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995) (internal citations and quotations omitted). In the Ninth Circuit, a federal court applying state law must utilize the tools of statutory interpretation prescribed by the relevant state supreme court. See Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1114 n.7 (9th Cir. 2003) (applying interpretive framework announced by Oregon Supreme Court to Oregon statute); Nike, Inc. v. McCarthy, 379 F.3d 576, 581 n.4 (9th Cir. 2004) (same).

The California Supreme Court has set forth the following principles of statutory construction:

> Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. We must look to the statute's words and give them their usual and ordinary meaning. The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, statutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. [...] If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.

People v. Arias, 45 Cal. 4th 169, 177 (2008) (internal citations and quotations omitted). "To determine the most reasonable interpretation of a statute, we look to its legislative history and

background." <u>Goodman v. Lozano</u>, 47 Cal. 4th 1327, 1332 (2010).

I turn to the task of construction.

### 1. Plain meaning[14]

One difficulty in ascertaining the statute's plain meaning is that the lay dictionaries commonly consulted by this court, such as Webster's (1976 & 2012) and the Oxford English Dictionary (2012), do not define the term "law firm." Black's Law Dictionary (9th Ed. 2010) defines "attorney" as "one who is designated to transact business for another; a legal agent," and "[a] person who practices law." Black's defines "law firm" as "[a]n association of lawyers who practice law together, usu. sharing clients and profits, in a business organized traditionally as a partnership but often today as either a professional corporation or a limited-liability company." <u>Id.</u> That is, "attorney" refers to a single individual "who practices law," while "law firm" refers to multiple individuals "who practice law together." <u>Id.</u>

### 2. Statutory context

This distinction – between the singular noun "attorney" and the collective noun "law firm" – is reinforced by examining related statutes and regulations. To begin with, the terms "attorney" and "lawyer" appear to be largely synonymous under California law.[15]

---

[14] The California Supreme Court consults both lay and legal dictionaries in construing the plain meaning of statutes. <u>See</u>, <u>e.g.</u>, <u>In re Ethan C.</u>, 54 Cal. 4th 610, 627 (2012) (examining Oxford English Dictionary and Black's Law Dictionary to construe the word "neglect").

[15] Cal. Bus. & Prof. Code § 6067 provides that "[e]very person on his admission [to the practice of law in California] shall take

California Rule of Professional Conduct 1-100(B)(3) defines "lawyer" as, among other things, "a member of the State Bar of California . . . ." By contrast, Rule of Professional Conduct 1-100(B)(1) defines "law firm" as:

> (a) two or more lawyers whose activities constitute the practice of law, and who share its profits, expenses, and liabilities; or
>
> (b) a law corporation which employs more than one lawyer; or
>
> (c) a division, department, office, or group within a business entity, which includes more than one lawyer who performs legal services for the business entity; or
>
> (d) a publicly funded entity which employs more than one lawyer to perform legal services.[16]

Straightforwardly then, "lawyer" and "law firm" mean different things: the former is a single individual ("a member"), while the latter is a collection of multiple individuals ("two or more lawyers," "more than one lawyer"). This distinction is reinforced by definitions of the term "lawyer" in Cal. Bus. & Prof. Code §§ 6157 (addressing legal advertising) and 6175 (addressing provision of financial services by lawyers). These definitions are nearly identical to that in the Rules of Professional Conduct,

---

an oath to support the Constitution of the United States and the Constitution of the State of California, and faithfully to discharge the duties of any attorney at law to the best of his knowledge and ability." A more specialized statute, Cal. Bus. & Prof. Code § 6180.14 (addressing cessation of practice of law) provides that attorney means "a member or former member of the State Bar." And according to a leading treatise on California law, "The title 'attorney' is understood to be synonymous with . . . 'lawyer.'" 7 Cal. Jur. 3d, Attorneys at Law § 1 (2011).

[16] The California Code does not appear to define the term "law firm."

1  except that they contain the addendum, "includes any agent of the

2  **lawyer or law firm** or law corporation doing business in the state."

3  This addendum further reinforces the notion that "lawyers" and "law

4  firms" are distinct concepts.[17]

5      Finally, to imply or presume an exception for "law firms" into

6  the statute would run afoul of "the familiar rule of construction,

7  expressio unius est exclusio alterius, where exceptions to a

8  general rule are specified by statute, other exceptions are not to

9  be implied or presumed." Wildlife Alive v. Chickering, 17 Cal. 3d

10  190, 195 (1976).

11      To summarize, the terms "attorney" and "law firm" have

12  different meanings under relevant provisions of California law,

13  strongly suggesting that the section 1788.2(c) definition of "debt

14  collector" includes law firms.

15          **3. Legislative history and public policy**

16      The legislative history of the Rosenthal Act gives no

17  indication of whether "law firms" are included in the term

18  "attorney" under Cal. Civ. Code § 1788(c).

19      But the legislative history of a related statutory provision

20  _____

21      [17] It also bears mention that many California statutes
distinguish between "attorneys" and "law firms," further suggesting
22  that the state legislature does not view the former as encompassing
the latter. See, e.g., Cal. Bus. & Prof. Code § 6450(a)
23  ("'Paralegal' means a person who [inter alia] either contracts with
or is employed by an attorney, law firm, corporation, governmental
24  agency, or other entity . . ."); Cal. Pub. Cont. Code
§ 10353.5(c)(4) ("'Contract for legal services' shall include any
25  contract between a state agency and any law frm, professional
corporation, law firm partnership, or individual attorney to
26  perform legal work . . .").

1  - Cal. Bus. & Prof. Code § 6077.5 - indicates that the terms are

2  distinct.  The  latter  statute,  enacted  seven  years  after  the

3  Rosenthal Act, requires an attorney, and "his or her[18] employees

4  who  are  employed  primarily  to  assist  in  the  collection  of  a

5  consumer debt", to comply with both the Rosenthal Act and certain

6  other enumerated debt collection practices. Violators are subject

7  to  discipline  by  the  State  Bar  of  California,  rather  than  by

8  private action. Cal. Bus. & Prof. Code § 6077.5(i). The legislative

9  history of section 6077.5 provides that "[t]he purpose of this bill

10  is  to  ensure  that  attorneys  comply  with  fair  debt  collection

11  practices when collecting consumer debts. This bill is the result

12  of  negotiations  between  the  State  Bar  and  the  collection  agency

13  industry  following  an  ongoing  dispute  as  to  the  extent  of  the

14  attorney exemptions from the [Rosenthal Act.]" California Assembly

15  Office  of  Research,  Concurrence  in  Senate  Amendments  (AB  1252

16  (Calderon)), May 3, 1984, at 1. In other words, the Rosenthal Act's

17  "attorney" exemption does not leave attorneys unregulated; they are

18  instead  regulated  by  the  State  Bar  of  California.  As  there  is  no

19  similar, alternative regulatory regime for "law firms," to exempt

20  them would undermine the public policy articulated in Cal. Civ.

21  Code § 1788.1(b): "to prohibit debt collectors from engaging in

22  unfair or deceptive acts or practices in the collection of consumer

23  debts."

24  ////

25

26      [18] Again, note the singular pronoun.

**4. Conclusion**

Given the above, the court finds that the "attorney" exemption from the definition of "debt collector" under the Rosenthal Act does not extend to "law firms."

Therefore, U.S. Bank's motion to dismiss the Rosenthal Act claims on the grounds that Nelson & Kennard is not a "debt collector" will be denied.

**E. Has plaintiff stated a claim under 15 U.S.C. § 1692d?**

The SAC alleges that, by erroneously suing plaintiff, taking his default judgment, recording a lien against his home, failing to voluntarily vacate the judgment against him, and opposing his motion to do the same, defendants violated 15 U.S.C. § 1692d. (SAC ¶¶ 42, 48, 59.)

Section 1692d forbids debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The statute provide illustrative examples of such conduct, including threats of violence, the use of obscene or abusive language, the publishing of lists of consumers who refuse to pay debts, and repeated phone calls with intent to annoy, abuse, or harass. Id.

U.S. Bank argues that the allegations against it do not meet the standards for conduct "the natural consequence of which is to harass, oppress, or abuse." (Mot. to Dismiss 10 – 12.)

Plaintiff fails to make any legal argument in opposition, instead merely maintaining that the facts he alleges are sufficient to state a claim under 15 U.S.C. § 1692d. He calls particular

1  attention to defendants' failure to vacate the erroneous judgment,

2  and their opposition to his motion, as instance of harassing,

3  oppressive, or abusive conduct.

4      In construing 15 U.S.C. § 1692d the Ninth Circuit has held

5  that: "[I]f the least sophisticated debtor would 'likely be misled'

6  by a communication from a debt collector, the debt collector has

7  violated the Act." Guerrero v. RJM Acquisitions LLC, 499 F.3d 926,

8  934 (9th Cir. 2007) (quoting Swanson v. S. Oregon Credit Serv., 869

9  F.2d 1222, 1225 (9th Cir. 1988)).[19]

10     Plaintiff does not allege that defendants sued him, took his

11  default, and placed a lien on his property for reasons other than

12  a mistaken belief that he owed the subject debt. If defendants had

13  sued the right party, these would have been legal means to collect

14  on a debt. As such, absent other facts, they cannot be interpreted

15  as steps taken to harass, oppress, or abuse plaintiff. On the other

16  hand, a jury could find that defendants' failure to vacate the

17  judgment, once they were informed of their error, was abusive.

18     Accordingly, the court will dismiss plaintiff's claim under

19  15 U.S.C. § 1692d, except as it relates to the failure of the bank

20  to vacate the judgment.

21  ////

22  ////

---

23

24     [19] But this least sophisticated debtor standard does not apply in instances where debtors are represented by attorneys. Id. at 935. "The rationale behind this rule is clear. Unsophisticated consumers are easily bullied and misled. Trained attorneys are not." Id.

25

26

**F. Is U.S. Bank's conduct protected by the litigation privilege?**

U.S. Bank maintains that plaintiff's claims for negligence, libel, and Rosenthal Act violations are barred by California's litigation privilege.

### 1. Definition of litigation privilege

Cal. Civ. Code § 47(b) sets forth the litigation privilege. According to Witkin, the statute "provides a privilege for a publication or broadcast in [*inter alia*] a legislative or judicial proceeding . . . . The usual application of the statute is in defamation actions. But it has been invoked in other proceedings." 5 Witkin, <u>Summary of Cal. Law</u>, Torts, § 186, p. 317 (10th ed. 2005). "The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions . . . . To further these purposes, the privilege has been broadly applied." <u>Jacob B. v. Cnty. of Shasta</u>, 40 Cal. 4th 948, 956 (2007) (internal citations and quotations omitted). "The privilege is now held applicable to . . . all torts except malicious prosecution." <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 212 (1990).

### 2. Negligence & litigation privilege

The SAC alleges that U.S. Bank was negligent in suing plaintiff for a debt he did not owe, taking his default judgment, placing a lien on his property, and failing to timely vacate the default judgment once it was informed of its error. (SAC ¶¶ 60, 71-72.)

1    U.S. Bank moves to dismiss this claim on the grounds that the

2    litigation privilege bars all tort causes of action except

3    malicious prosecution. (Mot. to Dismiss 12.) Plaintiff counters

4    that he is suing based upon an action - U.S. Bank's decision to sue

5    him, the incorrect party - rather than a protected communication.

6    (Opposition 13.)

7    The California Supreme Court has repeatedly held that "the

8    policy of encouraging free access to the courts was so important

9    as to require application of the privilege to torts [beyond]

10   defamation," including negligence. Silberg v. Anderson, 50 Cal. 3d

11   at 215 (1990) (citing Albertson v. Raboff, 46 Cal. 2d 375, 381

12   (1956)). The privilege is held to be "absolute" in that it

13   encompasses even communications motivated by actual malice or the

14   intent to do harm. See Pettitt v. Levy, 28 Cal. App. 3d 484, 489

15   (1972) (sustaining demurrer where defendants allegedly conspired

16   to file a false or forged building permit, which in turn lured

17   plaintiffs into making and losing a substantial business

18   investment). It follows that the privilege bars actions for simple

19   negligence, such as plaintiff is alleging.

20   Plaintiff's contention that he is suing based on an action

21   (deciding to name him as a defendant), rather than a protected

22   communication (actually naming him as a defendant), cannot prevail.

23   The filing of every lawsuit is preceded by decisions about whom to

24   sue, which facts and claims to plead, etc. To make these decisions

25   actionable, as plaintiff urges, would simply eviscerate the

26   litigation privilege.

1    Accordingly, the court will dismiss plaintiff's negligence
2    claim without leave to amend.

### 3. Libel & litigation privilege

4    The SAC also alleges a cause of action for libel, asserting
5    that U.S. Bank defamed plaintiff by suing him for a debt he did not
6    owe, recording the ensuing judgment, and allowing the judgment to
7    remain in place even after learning of its error. (SAC ¶¶ 60, 75.)

8    Libel is the canonical tort barred by the litigation
9    privilege. See Oren Royal Oaks Venture v. Greenberg, Bernhard,
10   Weiss & Karma, Inc., 42 Cal. 3d 1157, 1163 (1986) ("The privilege
11   recognized by section 47(2) . . . was primarily designed to limit
12   an individual's potential liability for defamation"). The privilege
13   extends to post-judgment collection activity — even attempts to
14   enforce invalid judgments. See, e.g., Brown v. Kennard, 94 Cal.
15   App. 4th 40 (2001) (sustaining demurrer, on the basis of litigation
16   privilege, to complaint alleging that defendant wrongfully levied
17   on legally-exempt assets of a nonparty to an invalid judgment).

18   Given the scope of the litigation privilege, the court will
19   dismiss plaintiff's cause of action for libel without leave to
20   amend.

### 4. Rosenthal Act & litigation privilege

22   The California Supreme Court has not ruled on the issue of
23   whether the litigation privilege bars Rosenthal Act claims founded
24   on unfair debt collection practices that occur during the course
25   of litigation.

26   Other courts have split on the issue. At least four courts

have held that the privilege supercedes the Rosenthal Act: <u>Taylor</u> <u>v. Quall</u>, 458 F. Supp. 2d 1065, 1068-69 (C.D. Cal. 2006) (Anderson, J.); <u>Nickoloff v. Wolpoff & Abramson, L.L.P.</u>, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007) (Rafeedie, J.); <u>Lopez Reyes v. Kenosian &</u> <u>Miele, LLP</u>, 525 F. Supp. 2d 1158, 1161-1165 (N.D. Cal. 2007) (Jenkins, J.); <u>Cassady v. Union Adjustment Co.</u>, No. C 07-5405, 2008 WL 4773976, 2008 U.S. Dist. LEXIS 90700 (N.D. Cal. Oct. 27, 2008) (Illston, J.). At least seven courts have reached the opposite conclusion: <u>First N. Am. Nat. Bank v. Superior Court</u>, No. B 176618, 2005 WL 67123, 2005 Cal. App. Unpub. LEXIS 356 (Cal.Ct.App. Jan. 13, 2005); <u>Oei</u>, 486 F. Supp. 2d at 1089 (Morrow, J.); <u>Butler v.</u> <u>Resurgence Fin., LLC</u>, 521 F. Supp. 2d 1093, 1095-97 (C.D. Cal. 2007) (King, J.); <u>Mello v. Great Seneca Fin. Corp.</u>, 526 F. Supp. 2d 1024, 1031 (C.D. Cal. 2007) (Gutierrez, J.); <u>Sial v. Unifund CCR</u> <u>Partners</u>, No. 08 CV 0905, 2008 WL 4079281, 2008 U.S. Dist. LEXIS 66666 (S.D. Cal. Aug. 28, 2008) (Miller, J.); <u>Welker v. Horwitz</u>, 626 F. Supp. 2d 1068, 1072 (S.D. Cal. 2009) (Gonzalez, J.); <u>Komarova</u>, 175 Cal. App. 4th at 324.

I am unable to discern any rule that would reconcile the decisions holding that the litigation privilege bars Rosenthal Act claims from those which reach the opposite conclusion. For example, the plaintiffs in <u>Taylor</u>, 458 F. Supp. 2d at 1065, and in <u>Mello</u>, 526 F. Supp. 2d at 1024, each alleged that they were sued on time-barred debts. Yet only the former holds that the litigation privilege bars Rosenthal Act claims.

What is notable is that since the issuance of <u>Komarova</u> - *i.e.*,

1  the sole published decision by a California appellate court to

2  address this issue - not a single federal court has found Rosenthal

3  Act claims to be barred by the litigation privilege.

4      _Komarova_'s holding is based on two principles. First, the rule

5  of statutory construction "that, in cases of irreconcilable

6  conflict, the specific statute prevails over the general one." _Id._

7  at 338 (_quoting_ _Oei_, 486 F. Supp. 2d at 1100). The Rosenthal Act

8  is the more specific statute, as "[t]he privilege is implicated in

9  all judicial and quasi-judicial proceedings and the Act is

10 implicated in only the small subset of those proceedings that

11 involve collection of consumer debts." _Id._ at 339. Second, _Komarova_

12 makes clear the "ease with which the Act could be circumvented if

13 the litigation privilege applied. In that event, unfair debt

14 collection practices could be immunized merely by filing suit on

15 the debt." _Id._ at 340.

16     I find the reasoning of _Komarova_ persuasive. The litigation

17 privilege does not bar plaintiff's claims under the Rosenthal Act.

18     **G.    Is plaintiff's cause of action for malicious prosecution**

19          **cognizable?**

20     The SAC alleges a cause of action for malicious prosecution,

21 based on U.S. Bank's opposition to plaintiff's motion to vacate the

22 default judgment against him. (SAC ¶¶ 48, 50, 58, 81.)

23     "Although the tort is usually called 'malicious prosecution,'

24 the word 'prosecution' is not a particularly apt description of the

25 underlying civil action. The Restatement [2d, Torts] uses the term

26 'wrongful use of civil proceedings' to refer to the tort." 5

1  Witkin, Summary of Cal. Law, Torts, § 486, p. 711 (10th ed. 2005).

2     "To establish a cause of action for the malicious prosecution

3  of a civil proceeding[,] a plaintiff must plead and prove that the

4  prior action (1) was commenced by or at the direction of the

5  defendant and was pursued to a legal termination in . . .

6  plaintiff's favor; (2) was brought without probable cause; and (3)

7  was initiated with malice. Zamos v. Stroud, 32 Cal. 4th 958, 965-66

8  (2004) (quoting Bertero v. Nat'l Gen. Corp., 13 Cal. 3d 43, 50

9  (1974)). Malicious prosecution "includes continuing to prosecute

10  a lawsuit discovered to lack probable cause . . . ." Id. at 969.

11     U.S. Bank moves to dismiss this claim on various grounds.

12  (Mot. to Dismiss 13-15.) The first is that it had probable cause

13  for initiating the Collection Action based on similarities in the

14  home address, name, ethnicity, and age between plaintiff and Khoa

15  T. Vo. At best, this argument requires findings of fact only

16  appropriate for a later stage of litigation. Plaintiff has

17  adequately alleged that U.S. Bank's opposition was commenced

18  without probable cause "because [defendants] admitted that

19  plaintiff was not liable for the debt." (SAC ¶¶ 50, 58.)

20     U.S. Bank's second ground for dismissal, that plaintiff failed

21  to adequately plead malice, requires more consideration. "The

22  malice required in an action for malicious prosecution is not

23  limited to actual hostility or ill will toward plaintiff but exists

24  when the proceedings are instituted primarily for an improper

25  purpose." Albertson, 46 Cal. 2d at 382. Examples of an "improper

26  purpose" are "(1) the person initiating the[ proceedings] does not

1  believe that his claim may be held valid; (2) the proceedings are

2  begun primarily because of hostility or ill will; (3) the

3  proceedings are initiated solely for the purpose of depriving the

4  person against whom they are initiated of a beneficial use of his

5  property; [or] (4) the proceedings are initiated for the purpose

6  of forcing a settlement which has no relation to the merits of the

7  claim." Id. (quoting Restatement (Second) of Torts § 676, cmt. c.)

8       The SAC alleges that U.S. Bank opposed plaintiff's motion to

9  vacate, "requesting instead that the Court simply allow US Bank to

10  amend the pleadings and judgment, which amendment would propose to

11  remove Plaintiff's (Huy Thanh Vo) name from the court records."

12  (SAC ¶ 47.)

13       U.S. Bank's opposition to the Motion to Vacate is not before

14  the court. But accepting plaintiff's characterization as true, it

15  appears that the SAC fails to plead facts sufficient to state a

16  claim for malice. U.S. Bank was trying to keep its judgment in

17  place, with Khoa T. Vo substituted in as the liable party. Even if

18  U.S. Bank had prevailed, plaintiff would presumably still have been

19  relieved of liability, the default judgment against him vacated,

20  and the lien on his property released. None of this is consistent

21  with the examples of an "improper purpose" under Albertson.

22       Accordingly, the court will dismiss plaintiff's cause of

23  action for malicious prosecution.

24       **H.   Is the Second Amended Complaint subject to the**

25            **Rooker-Feldman doctrine?**

26       U.S. Bank argues that this court lacks subject matter

1    jurisdiction over plaintiff's claim by virtue of the <u>Rooker</u>-<u>Feldman</u>

2    doctrine.   That assertion fails.

3         **1. Standard**

4         The <u>Rooker</u>-<u>Feldman</u> doctrine derives from the Supreme Court's

5    decisions in <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and

6    <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462

7    (1983). According to the Ninth Circuit, "the following general

8    formulation describes the distinctive role of the <u>Rooker</u>-<u>Feldman</u>

9    doctrine in our federal system: If a federal plaintiff asserts as

10   a legal wrong an allegedly erroneous decision by a state court, and

11   seeks relief from a state court judgment based on that decision,

12   <u>Rooker</u>-<u>Feldman</u> bars subject matter jurisdiction in federal district

13   court." <u>Noel v. Hall</u>, 341 F.3d 1148, 1164 (9th Cir. 2003). The

14   district court is also barred from hearing any issues raised in the

15   federal suit that are "inextricably intertwined" with issues

16   resolved in the state court decision. <u>Id.</u> at 1158. "If, on the

17   other hand, a federal plaintiff asserts as a legal wrong an

18   allegedly illegal act or omission by an adverse party, <u>Rooker</u>-

19   <u>Feldman</u> does not bar jurisdiction." <u>Id.</u> at 1164. Thus,

20   <u>Rooker</u>-<u>Feldman</u> only applies if "the federal plaintiff both asserts

21   as her injury legal error or errors by the state court and seeks

22   as her remedy relief from the state court judgment." <u>Vacation</u>

23   <u>Village, Inc. v. Clark Cnty.</u>, 497 F.3d 902, 911 (9th Cir.2007)

24   (quoting <u>Kougasian v. TMSL, Inc.</u>, 359 F.3d 1136, 1140 (9th

25   Cir.2004)).

26   ////

### 2. Application

Plaintiff "asserts as a legal wrong an allegedly illegal act": that defendants sued him for a debt he did not owe. Plaintiff is not seeking relief from a state court judgment. The Sacramento County Superior Court has already vacated the judgment against him. As plaintiff correctly notes, "[T]here is not even a lower court judgment . . . to complain about or seek relief from – since the lower court judgment was vacated as to Plaintiff by the same court that issued it. Rather, Plaintiff seeks to recover from injuries sustained as a result of Defendants' statutory violations and negligence when they wrongfully sued him . . . ." (Opposition 14.)

As for U.S. Bank's argument that the issues raised herein are "inextricably intertwined" with a state court judgment (Mot. to Dismiss 16), defendant again ignores the fact that there is no underlying state court judgment.

Accordingly, the <u>Rooker</u>-<u>Feldman</u> doctrine does not bar the court from exercising subject matter jurisdiction over this case.

### I.   **Has plaintiff waived his right to obtain monetary relief by failing to seek relief in state court?**

U.S. Bank argues that plaintiff has waived his right to monetary relief in this action by failing to seek remedies available in the California courts under state law.

U.S. Bank identifies Cal. Code Civ. Proc. §§ 128.5 (allowing sanctions for "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay"), 128.7 (the California counterpart to Rule 11), and 473(c)(1) (allowing monetary penalties

1   and other relief on relief from default judgment) as statutes under

2   which plaintiff could have proceeded. In support of its position,

3   U.S. Bank cites Cal. Civ. Code § 3513 and <u>McDermott v. Superior</u>

4   <u>Court</u>, 6 Cal. 3d 693, 698 n.3 (1972). U.S. Bank's position is

5   without merit.

6       Cal. Civ. Code § 3513 sets forth a maxim of jurisprudence

7   ("Any one may waive the advantage of a law intended solely for his

8   benefit"), not a statutory basis for a waiver claim. <u>McDermott</u>,

9   6 Cal. 3d at 698 n.3, provides a definition of waiver under

10  California law, "the intentional relinquishment of a known right

11  with knowledge of the facts."

12      But U.S. Bank has provided no basis for concluding that

13  plaintiff waived his right to seek monetary relief in this action

14  by failing to seek sanctions or penalties under the cited Code

15  sections. These provisions provide one form of remedy for certain

16  wrongs alleged by plaintiff; the FDCPA and the Rosenthal Act

17  provide other forms of remedy. Plaintiff is not estopped from

18  seeking the latter because he did not seek the former. Congress and

19  the California legislature were fully aware that parties seeking

20  to collect a debt might misuse the state courts. For example, the

21  FDCPA explicitly requires debt collectors to bring collection

22  actions in the proper venue. 15 U.S.C. § 1692i. Yet neither the

23  FDCPA nor the Rosenthal Act requires parties who have experienced

24  improper litigation tactics to move for judicial sanctions before

25  initiating suit. In fact, numerous reported decisions allow direct

26  recovery for unlawful debt-collection-related litigation tactics.

1   <u>See</u>, <u>e.g.</u>, <u>McCollough v. Johnson, Rodenburg & Lauinger, LLC</u>, 637

2   F.3d 939 (2011) (affirming summary judgment under FDCPA, and jury

3   award of $311,000 under FDCPA and state-law causes of action,

4   against law firm which sued on time-barred debt); <u>Komarova</u>, 175

5   Cal. App. 4th at 324 (affirming jury award of $197,905 for

6   violations of Rosenthal Act against debt collector which, among

7   other things, obtained a default arbitration award against the

8   wrong defendant and sought to confirm the award in state court).

9       U.S. Bank's motion to dismiss the SAC on the basis of waiver

10  is therefore denied.

11  **IV. CONCLUSION**

12  The court hereby orders as follows:

13      [1] U.S. Bank's motion to dismiss the Second Amended

14      Complaint for lack of subject matter jurisdiction is DENIED.

15      [2] Plaintiff's FDCPA and Rosenthal Act claims are DISMISSED

16      without prejudice to the extent they are premised on

17      violations of 15 U.S.C. § 1692d, except as any alleged

18      violations relate to defendants' failure to vacate the

19      judgment against plaintiff. In all other respects, U.S.

20      Bank's motion to dismiss plaintiff's claims under the FDCPA

21      and the Rosenthal Act is DENIED.

22      [3] Plaintiff's claim for malicious prosecution is DISMISSED

23      without prejudice.

24      [4] Plaintiff's claims for negligence and libel are DISMISSED

25      with prejudice.

26      [5] Plaintiff is DIRECTED to file a Third Amended Complaint

1    in accordance with this order no more than 21 days after its

2    entry.[20]

3    IT IS SO ORDERED.

4    DATED:  March 14, 2013.

5

6

7                                LAWRENCE K. KARLTON
                                 SENIOR JUDGE
8                                UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

---

23        [20] The SAC and plaintiff's Opposition repeatedly miscite
     federal statutes. Specifically, 15 U.S.C. § 1692d is miscited as
24   15 U.S.C. § 1692(d) (See, e.g., SAC ¶ 42, 49; Opposition 12), 15
     U.S.C. § 1692e is miscited as 15 U.S.C. § 1692(e) (See, e.g., SAC
25   ¶¶ 17, 18, 21, 24), and 15 U.S.C. 1692f is miscited as 15 U.S.C.
     § 1692(f) (See, e.g., SAC ¶¶ 29, 30, 31). Plaintiff is cautioned
26   to cite accurately in any future filings.